**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| NYEISHA FELDER,<br>    for her minor child, M.J.,<br>    Plaintiff, | :<br>:<br>:<br>: | CIVIL CASE NO.<br>3:23-CV-01086 (JCH) |
| v. | :<br>: | |
| BOARD OF EDUCATION OF<br>THE CITY OF BRIDGEPORT,<br>    Defendant. | :<br>:<br>:<br>: | JUNE 5, 2025 |

**RULING ON MOTION FOR SUMMARY JUDGMENT (DOC. NO. 24)**

**I.     INTRODUCTION**

The plaintiff, Nyeisha Felder ("Ms. Felder"), brings this lawsuit on behalf of her minor child, M.J., against the Board of Education of the City of Bridgeport ("the BOE"), alleging that the defendant created a hostile educational environment and discriminated against her child in violation of the Rehabilitation Act of 1973, section 701 et seq. of title 29 of the U.S. Code, and violated her child's substantive due process rights made actionable under the Civil Rights Act of 1871, section 1983 of title 42 of the U.S. Code. See Complaint ("Compl."). Before the court is the defendant's Motion for Summary Judgment. Defendant's Motion for Summary Judgment (Doc. No. 24); see also Defendant's Memorandum of Law in Support of Motion for Summary Judgment ("Def.'s Mem.") (Doc. No. 24-1), Defendant's Reply to Plaintiff's Opposition to Motion for Summary Judgment ("Def.'s Reply") (Doc. No. 26). Ms. Felder Opposes the Motion. See Plaintiff's Opposition to Motion for Summary Judgment ("Pl.'s Opp'n") (Doc. No. 25).

For the reasons stated below, the court grants the Motion.

1

## II.  BACKGROUND

### A.  Factual Background[1]

Ms. Felder is the mother of M.J., who attended Bryant Elementary School from 2022 to 2023.  Defendant's Local Rule 56(a)(1) Statement ("Def.'s 56(a)(1) Stmt.") (Doc. No. 24-6) at ¶¶ 1, 4; Plaintiff's Local Rule 56(a)(2) Statement ("Pl.'s 56(a)(2) Stmt.") (Doc. No. 25-1) at ¶¶ 1, 4.  The school is governed by the BOE.  Def.'s 56(a)(1) Stmt. at ¶ 3; Pl.'s 56(a)(2) Stmt. at ¶ 3.  At an unspecified time, M.J. was diagnosed with ADHD and is entitled to receive special education services.  Def.'s 56(a)(1) Stmt. at ¶ 5; Pl.'s 56(a)(2) Stmt. at ¶ 5.

On November 18, 2022, M.J. was involved in a disagreement with another student about access to a book kept in the classroom.  Def.'s 56(a)(2) Stmt. at ¶¶ 8–10; Pl.'s 56(a)(2) Stmt. at ¶¶ 8–10.  The teacher, Julia Tracey, eventually called for the school's security guard, Anthony Velasquez ("Mr. Velasquez"), to come to the classroom to help resolve the dispute.  Def.'s 56(a)(1) Stmt. at ¶ 11; Pl.'s 56(a)(2) Stmt. at ¶ 11.  Upon arriving to the classroom, Mr. Velasquez directed M.J., who was holding the book in dispute, to give the book to the other student.  Def.'s 56(a)(1) Stmt. at ¶ 14; Pl.'s 56(a)(2) Stmt. at ¶ 14.  M.J. declined to do so, explaining that he was entitled to read the book.  Def.'s 56(a)(1) Stmt. at ¶ 15; Pl.'s 56(a)(2) Stmt. at ¶ 15.  Mr. Velasquez became angry, and he told M.J., "I'm sick of you" and "I'm tired of you."  Def.'s 56(a)(1) Stmt. at ¶ 16; Pl.'s 56(a)(2) Stmt. at ¶ 16.  As he was making these comments, Mr.

---

[1] As it must, the court construes all disputed facts in the light most favorable to the non-moving party.  It notes where the parties disagree.  The court draws primarily from the parties' Local Rule 56(a) Statements and supporting Exhibits in summarizing the material facts.  Ordinarily, the court would cite to the non-movant's Local Rule 56(a)(2) Statement where the parties agree because, in accordance with Local Rule 56(a)(2), they should contain a reproduction of each numbered paragraph from the moving party's Local Rule 56(a)(1) Statement.  Here, however, Ms. Felder did not comply with Local Rule 56(a)(2); thus, the court will cite to both Rule 56(a) Statements where appropriate.

Velasquez grabbed M.J. and slammed him into a desk, where M.J. landed on his back. Def.'s 56(a)(1) Stmt. at ¶ 16; Pl.'s 56(a)(2) Stmt. at ¶ 16.  Mr. Velasquez then removed M.J. from the classroom and threw M.J. onto the floor, where M.J. landed on his back once again.  See Def.'s 56(a)(1) Stmt. at ¶¶ 16–18; Pl.'s 56(a)(2) Stmt. at ¶¶ 16–18.

The principal of Bryant Elementary School, Victoria Egri ("Ms. Egri"), arrived at the scene and found Mr. Velasquez restraining M.J. in the hallway while M.J. was attempting to fight Mr. Velasquez.  Def.'s 56(a)(1) Stmt. at ¶¶ 19–22; Pl.'s 56(a)(2) Stmt. at ¶¶ 19–22.  Ms. Egri ordered Mr. Velasquez to release M.J., which he did; she then escorted M.J. to the nurse's office and informed Ms. Felder of the incident.  Def.'s 56(a)(1) Stmt. at ¶¶ 25, 27; Pl.'s 56(a)(2) Stmt. at ¶¶ 25, 27.  As a result of the November 18 incident, M.J.'s back hurt for about two days and Ms. Felder kept M.J. out of school for approximately one week. Def.'s 56(a)(1) Stmt. at ¶¶ 37–38; Pl.'s 56(a)(2) Stmt. at ¶¶ 37–38.

After this incident on November 18, Ms. Felder believes school staff "shunned" M.J., did not try to educate or otherwise help M.J. and failed to provide M.J. with a suitable education.  Def.'s 56(a)(1) Stmt. at ¶¶ 43–44; Pl.'s 56(a)(2) Stmt. at ¶¶ 43–44.  It is Ms. Felder's view that school staff wanted M.J. to leave the school following the incident.   Def.'s 56(a)(1) Stmt. at ¶ 43; Pl.'s 56(a)(2) Stmt. at ¶ 43.  As a result of the schools supposed treatment of M.J., it is Ms. Felder's view that M.J. was denied the benefits to which he was entitled pursuant to his individualized education plan.  Def.'s 56(a)(1) Stmt. at ¶ 45; Pl.'s 56(a)(2) Stmt. at ¶ 45.

In addition to the above facts, upon which the parties agree, Ms. Felder asserts additional material facts as part of her Local Rule 56(a)(2) Statement.  She maintains

that Mr. Velasquez is a large man, who appeared to be angry when he entered the classroom on November 18.  Pl.'s 56(a)(2) Stmt., Additional Material Facts, at ¶¶ 1–2.  Ms. Felder further asserts that following the incident, M.J. became aggressive, started biting his nails, and was easily startled.  Id. at ¶¶ 9–10.  Ms. Felder maintains also that M.J.'s teacher stopped talking to her following November 18, M.J.'s special education teachers blamed him for the incident in question, and M.J.'s school bus driver stopped honking the horn to alert Ms. Felder of the bus's arrival after the incident.  Id. at ¶¶ 7–8, 11.

### III.     LEGAL STANDARD

A motion for summary judgment may be granted only when the moving party can establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71-72 (2d Cir. 2016).  If the moving party satisfies this burden, the nonmoving party must set forth specific facts demonstrating that there is indeed "a genuine issue for trial."  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  A genuine issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Cross Com. Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016).  Unsupported allegations do not create a material issue of fact and cannot overcome a properly supported motion for summary judgment.  See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).  In assessing the record to determine whether there are disputed issues of material fact, the court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought."  LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995).

**IV.     DISCUSSION**

    A.     Count One: section 504

When it enacted the Rehabilitation Act of 1973, Congress found "individuals with disabilities continually encounter various forms of discrimination in such critical areas as . . . education," among others.  29 U.S.C. § 701(a)(5).  To address this problem, the Act provides, "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]"  Id. at § 794(a).  The Act creates a private right of action to enforce this ban on discrimination when it is done on the basis of one's disability.  Mrs. C. v. Wheaton, 916 F.2d 69, 74 (2d Cir. 1990).

Ms. Felder brings two claims arising under section 504 of the Rehabilitation Act: first, that the BOE created a hostile education environment; and, second, that the BOE denied M.J. benefits and services to which he was entitled on the basis of his disability.  Pl.'s Opp'n at 3–4.  The BOE argues Ms. Felder has failed to present evidence upon which a reasonable jury could find in her favor on either claim.  Def.'s Mem. at 7–14; Def.'s Reply at 1–4.  Ms. Felder opposes this assertion.  Pl.'s Opp'n at 3–4.  The court will consider the BOE's arguments as to Ms. Felder's section 504 claims in turn.

        1.     Hostile Education Environment

The Rehabilitation Act does not expressly contemplate a hostile education environment claim, and the Second Circuit does not appear to have addressed the issue.  Hamilton v. City Coll. of City Univ. of New York, 173 F. Supp. 2d 181, 185 n. 1

5

(S.D.N.Y. 2001).[2]  However, the BOE suggests a hostile education environment claim is cognizable under the Rehabilitation Act, Def.'s Opp'n at 8, and other courts in this Circuit have concluded hostile education environment claims are cognizable under the Act.  See, e.g., Cain v. Mercy Coll., No. 20-CV-2262 (LLS), 2020 WL 4194637, at *5 (S.D.N.Y. July 20, 2020); Pell v. Trs. of Columbia Univ. In City of New York, No. 97-CV-0193 (SS), 1998 WL 19989, at *17 (S.D.N.Y. Jan. 21, 1998).  Accordingly, the court will assume for the purpose of deciding the instant Motion that Ms. Felder's hostile education environment claim is cognizable under the Rehabilitation Act.

According to the BOE, Ms. Felder has failed to adduce evidence upon which a reasonable jury could find the BOE created a hostile education environment.  Def.'s Mem. at 10–13; Def.'s Reply at 1–4.  This is because Ms. Felder's assertions that M.J. was "shunned" by educators, or that educators were unwilling to help M.J. after the events of November 18, are solely based on general, conjectural, and self-serving statements made by Ms. Felder and M.J. during their depositions.  Def.'s Mem. at 10; Def.'s Reply at 3–4.  Further, the BOE argues that, to the extent Ms. Felder's hostile work environment claim is based on Mr. Vazquez's treatment of M.J. on November 18, this event was an "isolated incident" and is not sufficiently severe to create a hostile education environment.  Def.'s Mem. at 10–12.  Ms. Felder asserts she has proffered sufficient evidence to raise a material issue of fact about whether M.J. was subject to a hostile education environment.  Pl.'s Opp'n at 3–4.

---

[2] Other circuits have declined to address the question.  E.g., Harrison v. Klein Indep. Sch. Dist., 856 F. App'x 480, 487 n. 6 (5th Cir. 2021) (explaining that it was not necessary to reach the question of whether a hostile education environment claim is cognizable under section 504); Newell v. Cent. Michigan Univ. Bd. of Trs., No. 20-1864, 2021 WL 3929220, at *10 (6th Cir. Sept. 2, 2021) (assuming without deciding that such a claim is cognizable); Garedakis v. Brentwood Union Sch. Dist., 756 F. App'x 669, 671 (9th Cir. 2018) (the same).

When considering hostile education environment claims, District Courts in this Circuit apply the standard used for hostile work environment claims brought under Title VII of the Civil Rights Act of 1964.  See Cain v. Mercy Coll., 2020 WL 4194637, at *5; Pell v. Trs. of Columbia Univ. In City of New York, 1998 WL 19989, at *18.  Thus, "[t]o survive summary judgment on a claim of hostile [education] environment . . . a plaintiff must 'produce evidence that the [classroom] is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's [education environment].'"  Banks v. Gen. Motors, LLC, 81 F.4th 242, 261 (2d Cir. 2023).  When considering claims of this type, the court must examine "a variety of factors including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with [a student's education.]" Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 102 (2d Cir. 2010).  Claims of this type involve "both objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive."  Rasmy v. Marriott Int'l, Inc., 952 F.3d 379, 387 (2d Cir. 2020) (internal quotation marks omitted).

Importantly, in opposing the BOE's Summary Judgment Motion as to her hostile education environment claim, Ms. Felder does not rely on evidence about Mr. Velasquez's actions on November 18.  See Pl.'s Opp'n at 3–4.  Rather, she relies on actions by school staff that occurred after November 18.  See id. at 3 ("Plaintiff's facts show that after Velasquez's attack, Defendants' officials changed.  They grew hostile to

7

Plaintiff and her son."). In so doing, Ms. Felder cites to her deposition testimony in which she asserts that unidentified school officials attempted to make it appear as though M.J. was responsible for the events of November 18 by characterizing the events of that day as arising from M.J. having "stole[n]" a book from another student and by adding a description of these events to M.J.'s I.E.P. See id. (citing Pl.'s Ex. A, Nyeisha Felder Deposition, (Doc. No. 25-2) at 31, 37). Ms. Felder asserts further, citing her deposition testimony, that following November 18, school staff "shunned" M.J. and did not try to help or educate him. Id. at 4 (citing Pl.'s Ex. A at 53–54). Ms. Felder also relies on other portions of her deposition testimony where she claimed unnamed teachers no longer held conversations with her, and "nit-pick[ed] and . . . bull[ied] her" after November 18. Id. (citing Pl.'s Ex. A at 55). This, according to Ms. Felder, created an atmosphere in which she felt staff members, specifically a Mr. Timothy, were trying to force M.J. out of the school." Id. at 4 (citing Pl.'s Ex. A at 55).[3] The plaintiff explains neither who Mr. Timothy is, nor why his actions, specifically, are of significance. See Pl.'s Opp'n.

Assuming the truth of Ms. Felder's testimony, as the court must at this stage of the litigation, this evidence is insufficient to survive summary judgment. The non-movant must adduce specific evidence, to create an issue of material fact. Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d Cir. 1996). The evidence cited by Ms. Felder as to her hostile education environment claim is insufficient for a reasonable jury to find M.J. was subject to an educational environment suffused with hostility because the evidence is of a general and conclusory nature.

---

[3] Ms. Felder cites to page 56 of her deposition transcript; however, the transcript provided to the court does not include page 56. See Pl.'s Ex. A (including only pages 18–19, 30–32, 36–41, 53–55, 65).

Further, the supposed treatment that M.J. experienced after November 18 has previously been found to be insufficient in the related hostile work environment context. See Cain, 2020 WL 4194637, at *6 (actions by a school administration that made the plaintiff feel like an "outcast" and that felt "hostile and threatening" did not rise to the level of a hostile education environment); see also, Mills v. S. Connecticut State Univ., 519 F. App'x 73, 75 (2d Cir. 2013) (no hostile work environment on the basis of physical intimidation and shunning); Quarless v. Bronx Lebanon Hosp. Ctr., 75 F. App'x 846, 848 (2d Cir. 2003) (summary order) (no hostile work environment on the basis of shunning and exclusion from certain functions); Mills v. S. Connecticut State Univ., No. 3:08-CV-1270 (VLB), 2011 WL 3490027, at *13 (D. Conn. Aug. 10, 2011), aff'd, 519 F. App'x 73 (2d Cir. 2013) ("[T]he fact that [the plaintiff's] male colleagues shunned her or avoided her at work [does not] constitute an actionable offense under Title VII."). The court's conclusion is further supported by Ms. Feldman's admission in her 56(a)(2) Statement that "[t]here were no differences in the educational services provided to M.J. before and after the [November 18] incident." Def.'s 56(a)(1) Stmt. at ¶ 46; Pl.'s 56(a)(2) Stmt. at ¶ 46. Accordingly, the court grants the BOE's Motion as to Ms. Felder's hostile education environment claim.

While the court does not intend to diminish the seriousness of Mr. Velazquez's behavior on November 18, the plaintiff cites to no evidence describing the events of that day in resisting the BOE's Motion for Summary Judgment as to her hostile education environment claim. See Pl.'s Opp'n at 3–4. In fact, the entirety of plaintiff's Opposition, which amounts to less than five double-spaced pages, includes little discussion about the events of November 18 in the discussion section of the memorandum. See Pl.'s

Opp'n at 3–5 (containing citations to various pages from Ms. Felder and M.J.'s depositions, one page of which the court cannot review because the plaintiff did not include it as an attachment to her Opposition).

### 2. Denial of Benefits

The BOE argues that Ms. Felder has failed to adduce evidence that M.J. was denied access to educational services that he was supposed to receive. Def.'s Mem. at 13; Def.'s Reply at 4–5. In support of this argument, the BOE notes that Ms. Felder testified there was no change to the nature of the services provided by the school after the November 18 incident and that she has no evidence M.J. was denied special education services. Def.'s Mem. at 13; Def.'s Reply at 5. Ms. Felder responds that following the events of November 18, M.J. has struggled with serious behavioral problems that prevent him from benefiting from services to which he is entitled as a student with a disability. Pl.'s Opp'n at 5. The extent of these behavioral problems, according to Ms. Felder, are that M.J. bites his nails, startles easily, and "feels bad about himself." Id.

To establish a prima facie denial of benefits claim in violation of section 504, a plaintiff must show that "(1) [the] plaintiff is a qualified individual with a disability; (2) [the] plaintiff was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by the public entity; and (3) such exclusion or discrimination was due to plaintiff's disability." B.C. v. Mount Vernon Sch. Dist., 837 F.3d 152, 158 (2d Cir. 2016) (cleaned up and internal quotation marks omitted). Such a claim may be based on any of "three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a

reasonable accommodation." Tsombanidis v. West Haven Fire Dep't, 352 F.3d 565, 573 (2d Cir.2003).

Ms. Felder cites to no case law suggesting that, as contemplated under the Rehabilitation Act, a student can be denied benefits when he is prevented from utilizing services to which he is entitled as a result of behavioral problems he develops. The only authority to which Ms. Felder cites is a "Dear Colleague" letter published on the Department of Education website. See Pl.'s Opp'n at 4. Assuming, arguendo, that such an understanding of denial of benefits is contemplated under the Act, Ms. Felder cites to no evidence demonstrating how, exactly, M.J. was unable to utilize benefits and services because of these behavior problems. See Pl.'s Opp'n at 5. In the light of the minimal evidentiary record before the court, a reasonable jury could not find M.J. was denied benefits to which he was entitled.

B.     Count Two: section 1983

The BOE argues that it is entitled to summary judgment as to Count Two of Ms. Felder's Complaint, a Monell claim, because Ms. Felder has failed to establish that the BOE engaged in a pattern or practice of behavior for which it could be liable. Def.'s Mem. at 14–15. The BOE argues also that Mr. Velasquez's actions on November 18 were not so severe that they violated M.J.'s constitutionally protected rights. Id. at 15–19; Def.'s Reply at 5–6. Ms. Felder does not address the BOE's first argument about failing to establish a pattern or practice of behavior attributable to the BOE. See Pl.'s Opp'n at 4–5. As to the BOE's second argument, Ms. Felder asserts that Mr. Velasquez's behavior is sufficiently serious to amount to a constitutional violation. Id.

"Municipal entities, including school districts, are 'persons' within the meaning of § 1983 and therefore subject to suit under that provision." Nagle v. Marron, 663 F.3d

11

100, 116 (2d Cir. 2011). However, municipal entities "are not liable 'on a respondeat superior theory,' simply because an employee committed a tort." Id. (quoting Monell v. Dep't of Soc. Serv. of City of New York, 436 U.S. 658, 691 (1978)). Instead, a municipal entity is responsible "if a violation of rights resulted from the 'government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" Id. (quoting Monell, 436 U.S. at 694). Other courts in this Circuit have concluded decisions made by school officials, such as principals, may amount to official policies for which a municipal entity may be liable. See, e.g. Francois v. Brentwood Union Free Sch. Dist., No. 21-CV-6265 (ENV), 2024 WL 5186731, at *10 (E.D.N.Y. Dec. 20, 2024); Vasquez v. New York City Dep't of Educ., No. 11-CV-3674 (AJN), 2015 WL 3619432, at *11 (S.D.N.Y. June 10, 2015), aff'd, 667 F. App'x 326 (2d Cir. 2016).

 Mr. Velasquez's actions on November 18 are troubling; however, the BOE cannot be held liable for them under Monell unless Ms. Felder adduces some evidence, suggesting that "through its deliberate conduct," the BOE "was the moving force behind the injury alleged." Agosto v. New York City Dep't of Educ., 982 F.3d 86, 98 (2d Cir. 2020) (internal quotation marks omitted). Ms. Felder falls short of this requirement because nowhere in her discussion of her Monell claim does she explain, let alone offer evidence, how Mr. Velasquez's supposed actions were the result of a BOE policy or custom. See Pl.'s Opp'n at 4–5 (discussing only the seriousness of Mr. Velasquez's alleged actions). The court, therefore, grants the BOE's Motion for Summary Judgment as to Count Two of the Complaint.

## V.     CONCLUSION

For the reasons stated above, the court grants the defendant's Motion for Summary Judgment (Doc. No. 24).

**SO ORDERED.**

Dated at New Haven, Connecticut this 5th day of June 2025.

                                                     /s/ Janet C. Hall
                                                     Janet C. Hall
                                                     United States District Judge